RENE L. VALLADARES
Federal Public Defender
Nevada State Bar No. 11479
REBECCA A. LEVY
Assistant Federal Public Defender
411 E. Bonneville, Ste. 250
Las Vegas, Nevada 89101
(702) 388-6577/Phone
Rebecca_Levy@fd.org

Attorneys for Rebecca Levy

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>     v.<br><br>BRENT KOVAR,<br><br>           Defendant. | Case No. 2:25-cr-00028-JAD-MDC-1<br><br>**DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION TO REVOKE PRETRIAL RELEASE** |

Certification: This response is timely filed.

  Comes now the defendant, Brent Kovar, by and through his attorney of record, Assistant Federal Public Defender Rebecca Levy, and submits this Response to the Government's Motion to Revoke Pretrial Release.

  DATED: April 25, 2025.

RENE L. VALLADARES
Federal Public Defender

By: */s/ Rebecca A. Levy*
REBECCA A. LEVY
Assistant Federal Public Defender
Attorney for Brent Kovar

**INTRODUCTION**

The government asks this Court to detain Brent Kovar, arguing that "[Mr. Kovar] is running a new fraudulent investment scheme while he is on pretrial release in this case."[1] The government's arguments presuppose that Mr. Kovar will pose a danger to the safety of any other person or the community such that no condition or combination of conditions will suffice to keep him out of custody. Importantly, Mr. Kovar is not a danger, and the government has not articulated in its motion that he is. Further, the government did not delineate why there are no conditions of release that will adequately protect the community from this "danger." Accordingly, this Court should deny the government's motion to revoke pretrial release.

**PROCEDURAL AND FACTUAL BACKGROUND**

On February 12, 2025, a federal grand jury empaneled in Las Vegas Nevada, returned a criminal indictment charging Mr. Kovar, with twelve counts of Wire Fraud, a violation of 18 U.S.C. § 1343; three counts of mail fraud in violation of 18 U.S.C. § 1341; and three counts of monetary transactions in criminally derived property in violation of 18 U.S.C. § 1957.[2]

On February 12, 2025, Mr. Kovar made his initial appearance before this Court.[3] The government did not seek detention.[4] This Court ordered his release with conditions.[5]

On April 11, 2025, the government filed a Motion to Revoke Pretrial Release based on an allegation that Mr. Kovar committed a new state or federal offense.[6] The government also

---

[1] ECF No. 24.
[2] ECF No. 1.
[3] ECF No. 4.
[4] *Id*.
[5] ECF. No. 8.
[6] ECF. No. 24.

2

argues in its motion that Mr. Kovar's release should be revoked based on allegations that he was participating in a new financial scheme that they deem fraudulent.

On April 15, 2025, undersigned counsel made a notice and took over Mr. Kovar's representation.[7]

## ARGUMENTS

18 U.S.C. § 3148 provides that, if the government moves to revoke bail, the Court shall detain the defendant only if it finds **both** "probable cause to believe that the person has committed a Federal, State, or local crime while on release, or clear and convincing evidence that the person violated any condition of release" **and** that either "there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community" or "the person is unlikely to abide by any condition or combination of conditions of release."[8]

But "[i]f the judicial officer finds that there are conditions of release that will assure that the person will not flee, or pose a danger to the safety of any other person or the community, and that the person will abide by such conditions, the judicial officer shall treat the person in accordance with the provisions of section 3142 of this title and may amend the conditions of release accordingly."[9] At the revocation hearing, the Court must make specific findings to support a revocation.[10]

Under *United States v. Reynolds*, "danger may, *at least in some cases*, encompass pecuniary or economic harm."[11] The government's motion quotes *United States. v. Soria*, 2011 U.S. Dist. LEXIS 92183, at *18 and states that "the Ninth Circuit has unequivocally

---

[7] ECF. No. 25.
[8] 18 U.S.C. § 3148(b).
[9] *Id*.
[10] *United States v. Davis*, 845 F.2d 412, 415 (2d Cir. 1988).
[11] 956 F.2d 192, 192 (9th Cir. 1992) (emphasis added).

3

rules that economic harm may be considered as a justification for detaining someone as a danger to the community," a quote which is cited from *Reynolds*.[12] While *Reynolds* provides little guidance on what constitutes economic danger the case cites *United States v. Provenzano*, 605 f.2d 85, 95 (3rd Cir. 1979) for this proposition. In *Provenzano*, a Third Circuit case, the trial court found (after a jury trial) that aside from three prior federal felony convictions, "on the basis of the Union's largess toward Provenzano during previous incarcerations and the continued control exercised by Provenzano's family, that if released id would have additional opportunity to exercise a substantial and corrupting influence within the union."[13] The allegations contained in the government's request for detention are a far cry from those in *Provenzano*. Furthermore, the government failed to delineate why, even if true, conditions can't be fashioned to allow Mr. Kovar to remain out of custody.

      **A.    The allegations against Mr. Kovar do not provide probable cause that he has committed a new federal, state or local crime.**

First, it is important to note that the allegations regarding Mr. Kovar's involvement in PIE were not entirely new to the government. Prior to Mr. Kovar's arraignment and the government agreeing to release, it had come to their attention that PIE existed. The government did not move for detention or mention PIE at that time.

Second, Mr. Kovar maintains his innocence with respect to both the formal charges outlined in the indictment and the uncharged allegations referenced in the government's motion.[14]

---

[12] ECF. No 24.

[13] *Id* at 96.

[14] *See United States v. Madoff*, 586 F. Supp. 2d 240, 254 (S.D.N.Y. 2009) (finding that "the Court does consider that a presumption of innocence may be a factor in determining the weight of an alleged economic harm and whether it would rise to the level of danger to the community")

4

Mr. Kovar further submits that he has not committed any new offenses either state or federal. The government makes several generalized arguments about PIE including: PIE is engaged in Bitcoin mining by renting time with supercomputers, Pie rents these supercomputers which are in a datacenter in Texas, PIE offers a money-back guarantee, PIE has not been involved in litigation, PIE offers the opportunity to mine for Bitcoin which can make money every second and more opportunities are in the future including opportunities to invest in a fleet of autonomous vehicles.[15]

None of these allegations on their face provide probable cause that Mr. Kovar committed a new crime. PIE is operated solely by Ms. Heidi Shields, who is the company's only owner and the primary individual responsible for all customer communications and transactions.[16]

The business model of PIE is based on individuals purchasing time allocations for Bitcoin mining. Mining services are performed by an independent cloud trading platform called Paybaz (www.paybaz.com). Ms. Shields basically acts as a broker for Paybaz, facilitating pooled investments from individuals to acquire higher volumes of computing power. This approach is common in the cryptocurrency space and is known to potentially yield significant returns in a short time.[17] The investments in PIE were modest, under $5000, and came exclusively from Ms. Shields' friends and family. No investor had any direct interaction with Mr. Kovar, and he did not personally profit from PIE. Mr. Kovar did provide his mother's Paybaz cryptocurrency account as collateral for the company as shown below in a snapshot from Ms. Kovar's account:

---

[15] ECF. No. 24.

[16] *See* Exhibit A, email from Heidi Shields

[17] What is bitcoin mining? How does crypto mining work? | Fidelity



The government suggests that the collateral account in question could not possibly contain the amount of Bitcoin that has been represented. However, even assuming arguendo that this assertion is accurate, any resulting fraud would be attributable to Paybaz, not PIE. In such a scenario, the victims would include not only the investors in PIE, but also Ms. Shields and Mr. Kovar, who relied on the legitimacy of Paybaz's platform.

It is important to emphasize that, to date, no investor in PIE has lost any money, nor has any investor been repaid in a manner consistent with a "Ponzi" scheme.

The statement that PIE has not been involved in any litigation is accurate and reflects the fact that it is a newly formed entity, solely owned and operated by Ms. Shields. Mr. Kovar

is not an owner of PIE, nor did he solicit any investments on its behalf. In fact, none of the investors in PIE have any contact with Mr. Kovar, and he is unknown to them.

Mr. Kovar had a very limited role in PIE, which included educating Ms. Shields on Bitcoin and Bitcoin mining and helping with technical matters. There is no doubt that Bitcoin and Bitcoin mining are very real and very lucrative.[18]

### B. There are conditions that will assure Mr. Kovar does not pose a danger to the community.

Even assuming the Court finds probable cause to believe that Mr. Kovar has committed a new offense, there are conditions, or a combination of conditions, that can reasonably assure the safety of the community. Given the availability of such conditions, revocation of Mr. Kovar's release would be an unnecessarily extreme measure. Furthermore, the government has failed to demonstrate that any available conditions of release would be inadequate to ensure community safety.

According to the Pretrial Services report, Mr. Kovar is 58 years old and has resided in Nevada since 2010. He currently lives with his elderly mother in a modest two-bedroom condominium. Mr. Kovar has not traveled outside of the United States since the early 2000s and serves as the primary caregiver for his mother, who is in her 90s and suffers from dementia. Ms. Kovar is entirely dependent on her son for assistance with basic activities of daily living, and she would be unable to care for herself without his support.

Mr. Kovar has no history of mental health issues, nor has he ever struggled with alcohol or substance abuse. He has no prior criminal record and, therefore, has never violated any terms of criminal supervision. At the time of his initial release, Pretrial Services recommended that Mr. Kovar be released. His current supervising officer, Jeremiah Bassard,

---

[18] See Bitcoin Price, BTC Price, Live Charts, and Marketcap: bitcoin price usd, btc, btc price usd, showing that Bitcoin increased 48.9% in only one year.

has indicated that Mr. Kovar has remained in regular communication, has complied with all requirements, and has not missed any scheduled appointments. Pretrial services is not making an affirmative recommendation for revocation at this time, but is instead deferring to the Court.

Mr. Kovar's current release conditions include all the standard conditions, along with only three special conditions: (1) he must report to U.S. Pretrial Services; (2) he must avoid all contact with victims and witnesses; and (3) he is prohibited from soliciting money from investors.[19] There are other conditions that can be added on Mr. Kovar to assure the Court of the safety of the community including: home detention (to prevent Mr. Kovar from meeting with anyone involved with PIE), not participate in any new financial dealings including participation in any businesses without the preapproval of Pretrial Services, allow Pretrial Services access to all financial records including but not limited to PayPal, participate in mental health counseling including MRT (Moral Reconation Therapy), actively seek either full-time or part-time employment, and avoid participation with PIE or anyone associated with PIE.

Mr. Kovar position is he strictly adhered to the terms of his supervision, including the explicit prohibition against soliciting funds from investors. As noted, he has had no contact whatsoever with any PIE investors. Admittedly, although he has not committed a new offense, Mr. Kovar acknowledges that even the appearance of impropriety associated with PIE could raise concerns. Due to his lack of experience with supervised release, he did not initially understand that his limited participation in PIE could be viewed as problematic. However, upon being informed of this concern, Mr. Kovar voluntarily ceased all involvement with PIE, even in a limited capacity. Mr. Kovar is unfamiliar with the criminal

---

[19] ECF. No. 8.

justice system, but has still demonstrated a willingness and ability to comply with all conditions imposed by this Court.

## **CONCLUSION**

Accordingly, the Court should find that revocation of Mr. Kovar's pretrial release is unwarranted, as there are conditions that can be imposed to ensure the safety of the community, even if this Court believes a violation may have occurred. Therefore, the government's motion to revoke Mr. Kovar's pretrial release should be denied.

DATED: April 25, 2025.

Respectfully submitted,

RENE L. VALLADARES
Federal Public Defender

*/s/ Rebecca A. Levy*
REBECCA A. LEVY
Assistant Federal Public Defender
Counsel for Brent Kovar