**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| United States of America,<br><br>          Plaintiff<br><br>v.<br><br>Brent Kovar,<br><br>          Defendant | Case No.: 2:25-cr-00028-JAD-MDC<br><br>**Order Denying Defendant's Motion to Dismiss or Suppress and Defendant's Motion in Limine**<br><br>[ECF Nos. 59, 62] |

Defendant Brent Kovar is less than two months away from a jury trial on criminal wire-fraud, mail-fraud, and money-laundering charges.  The Securities and Exchange Commission (SEC) first began investigating Kovar and his company Profit Connect for civil liability and later looped in the United States Attorney's Office (USAO) after concluding that Kovar and his business may have been engaging in criminal activity.  Kovar moves to dismiss the criminal case or alternatively to suppress any evidence derived from the SEC's civil investigation at trial, suggesting that his constitutional rights may have been violated by the parallel investigations. He seeks discovery and an evidentiary hearing to explore the coordination between the SEC, the USAO, and the Internal Revenue Service (IRS) in order to determine whether they conducted the criminal investigation in bad faith.  But Kovar doesn't provide any information that would warrant such a fishing expedition, so I deny his motion.

Kovar also moves in limine to exclude the use of the term "Ponzi scheme" at trial.[1]  But "Ponzi scheme" accurately describes the government's allegations against him, and Kovar doesn't demonstrate that using the term would cause unfair prejudice.  So I deny that motion, too.

---

[1] ECF No. 62.

**Background**[2]

The SEC began investigating Kovar and Profit Connect in February 2021.[3]  In June 2021, SEC attorneys participated in a phone call with attorneys for the USAO to make a criminal referral after the SEC "uncovered criminal conduct resembling a Ponzi scheme" while investigating Profit Connect.[4]  According to SEC attorney Kathryn Wanner, who was one of the attorneys on that call, that was the first time the SEC spoke with the USAO about Kovar or Profit Connect.[5]  The SEC filed its civil complaint against Profit Connect, Kovar, and other employees on July 8, 2021.[6]  Wanner emailed Kovar a courtesy copy of the court's order granting the SEC's motion for a temporary restraining order to freeze Profit Connect and Kovar's assets in that case a week later, but that's the only communication that SEC attorneys had with Kovar at that point.

On July 23, 2021, I granted the parties' stipulation to appoint a temporary receiver who was granted access to Profit Connect's financial records and properties.[7]  On July 25th, the receiver, who is not employed by the SEC, interviewed Kovar.[8]  And about a week later, the parties communicated about Kovar's decision to assert his Fifth Amendment right against self-incrimination and decline to provide a schedule of his personal assets.[9]

---

[2] This summary concerns only the facts related to the parallel investigations at issue in Kovar's motion to dismiss.  It is based on the exhibits attached to the parties' briefs and is not intended as findings of fact.

[3] ECF No. 63-1 at 2, ¶ 3 (decl. of SEC attorney Kathryn C. Wanner).

[4] ECF No. 63-2 at 2 (incident summary of SEC referral).

[5] ECF No. 63-1 at 2, ¶ 4.

[6] *See SEC v. Profit Connect Wealth Servs. Inc.*, Case No. 2:21-cv-01298-JAD-BNW (D. Nev.).

[7] ECF No. 23 in *SEC v. Profit Connect*, Case No. 2:21-cv-01298-JAD-BNW.

[8] *See* ECF No. 63-3 (receiver's interview notes).

[9] *See* ECF No. 63 at 5 (summarizing email communications from the SEC concerning Kovar's decision to plead the Fifth).

In September 2021, an FBI special agent interviewed the receiver appointed by the court in the SEC case about Profit Connect.[10]  Following that interview, the FBI opened a case file into Kovar and his business and later subpoenaed the receiver for the documents and records he had obtained through the SEC action.[11]  In August 2022, a special agent from the IRS interviewed Kovar after reading him a statement of rights informing Kovar that anything he says and any documents he provides "may be used against [him] in any criminal proceeding which may be undertaken."[12]  About two-and-a-half years passed before a federal grand jury returned a criminal indictment against Kovar in February 2025, charging him with wire fraud, mail fraud, and money laundering.[13]

## Discussion

**A.  Kovar's speculation concerning the parallel civil and criminal investigations into his conduct does not warrant dismissal, suppression, or an evidentiary hearing.**

Kovar invokes the principles articulated in the Ninth Circuit's opinion in *United States v. Stringer*[14] to contend that the government may have violated his constitutional rights when it conducted parallel civil and criminal investigations into his conduct.  He "alleges constitutional violations on information and belief," contending that he does not have "sufficient information" to determine whether the SEC and USAO violated his due-process and Fifth Amendment rights, but believes he is entitled to discovery to see if they did.[15]  He specifically seeks information

---

[10] ECF No. 63-4 (FBI summary of receiver interview).

[11] ECF No. 63-5.

[12] ECF No. 63 at 6 n.34.

[13] ECF No. 1.

[14] *United States v. Stringer*, 535 F.3d 929 (9th Cir. 2008).

[15] ECF No. 59 at 9.

concerning "whether the government brought the SEC action solely to develop evidence for a criminal prosecution, . . . failed to disclose the possibility of criminal prosecution to [] Kovar, . . . or made affirmative misrepresentations about the parallel investigations."[16]

### 1. Parallel proceedings do not raise due-process concerns absent bad-faith conduct.

"The Supreme Court has long held that the government may conduct parallel civil and criminal investigations without violating the due process clause, so long as it does not act in bad faith."[17]  Bad faith can be shown if an agency "made affirmative misrepresentations or conducted a civil investigation solely for purposes of advancing a criminal case."[18]  And a civil agency need only put a defendant on "sufficient notice . . . that any information could be used against [him] in a subsequent criminal proceeding" to allay any self-incrimination concerns.[19]  Finally, the Fourth Amendment may be violated if the civil agency engaged in "trickery or deceit" to gain a defendant's consent for a search.[20]

In *Stringer*, the SEC opened an investigation against the defendants for possible civil-securities-fraud violations.[21]  Two weeks later, the SEC conducted its first of several meetings with the local USAO to discuss pursuing a criminal investigation, too.[22]  The USAO and the FBI quickly opened a criminal case, and the civil and criminal investigation "proceeded in tandem"

---

[16] *Id.*

[17] *Stringer*, 535 F.3d at 936.

[18] *Id.* at 937.

[19] *Id.* at 938.

[20] *Id.* at 940.

[21] *Id.* at 933.

[22] *Id.*

while the SEC continued to communicate and share documents with the USAO and the FBI.[23] At one point the USAO decided to keep the criminal investigation confidential to avoid compromising the defendants' cooperation with the SEC, but it still planned on bringing criminal charges against them.[24] While these investigations were ongoing, the SEC interviewed the defendants and gave them a form explaining that the "Commission often makes its files available to other governmental agencies, particularly the United States Attorneys and state prosecutors."[25] It also advised the defendants that any information given to the SEC "may be used against you in any federal . . . civil or criminal proceedings" and that they had the Fifth Amendment right to refuse to provide information that may incriminate them.[26] But when one of the defendants was deposed and his lawyer asked the SEC attorney whether the USAO was involved in the investigation, SEC counsel evaded the question, referred him to the form explaining that investigation records may be shared with prosecutors, and told him to direct his questions to the USAO.[27]

The defendants raised three challenges to the SEC and USAO's parallel investigations. They contended that the agencies violated their due-process and Fourth Amendment rights, along with their right to invoke the Fifth Amendment's right against self-incrimination. The Ninth Circuit rejected all three challenges. It held that the SEC did not act in bad faith when it withheld information about the subsequent criminal proceeding because informing the defendants that information discovered in the SEC case could be shared with criminal

---

[23] *Id.*

[24] *Id.* at 934.

[25] *Id.* at 934–35.

[26] *Id.*

[27] *Id.* at 935.

prosecutors was sufficient to satisfy due process.[28]  It also found that the SEC agents did not make affirmative misrepresentations about the existence of the criminal proceedings by refusing to answer direct questions about the criminal investigation.[29]  And it held that the SEC didn't engage in trickery or deceit to trigger Fourth Amendment protections, either.[30]

> ### 2. *Kovar's unfounded speculation about collaboration between the civil and criminal agencies investigating his behavior does not demonstrate that he is entitled to any relief.*

Kovar offers nothing other than the bare existence of the parallel investigations to argue that he is entitled to discovery on the topic.  But nothing in *Stringer* promotes that fishing expedition.  The Ninth Circuit instead emphasized how rare it is that duel investigations would raise constitutional concerns, emphasizing that "[e]ffective enforcement of the securities laws requires that the SEC and [the Department of] Justice be able to investigate possible violations simultaneously" and holding that only the government's bad-faith conduct can cause parallel investigations to violate a defendant's due-process rights.[31]  At no point did the Ninth Circuit suggest that a district court is required to prophylactically hold a hearing to probe the communications between agencies whenever parallel investigations are involved.[32]

---

[28] *Id.* at 938.

[29] *Id.* at 939.

[30] *Id.*

[31] The Ninth Circuit hasn't articulated a standard to determine whether a defendant may seek discovery into the government's conduct during parallel investigations.  But I presume that the Circuit would adopt a threshold similar to that used in selective-prosecution cases, in which the discovery standard is less stringent than the showing necessary to make out a prima facie case of selective prosecution, but it is still "nearly as rigorous as that for proving the claim itself." *United States v. Sellers*, 906 F.3d 848, 852 (9th Cir. 2018) (cleaned up).

[32] Kovar's reply appears to suggest that the court is required to do so if the government doesn't "disprove" the need for an evidentiary hearing.  *See* ECF No. 65 at 4 (contending that the government's arguments "are insufficient to disprove the need for an evidentiary hearing"), 5 (arguing that the government's evidence "is insufficient to defuse the need for an evidentiary hearing").  But Kovar does not cite to any authority to suggest that the burden is on the

Kovar's speculation that certain events in his case raise the specter of bad-faith conduct does not warrant discovery or further consideration of his contentions.  Kovar first points to the fact that the SEC spoke with the USAO in June 2021, but he contends that he doesn't know if any conversations between the agencies happened earlier.  In response, the SEC produced a declaration from one of their lead attorneys in the civil case confirming that the June conversation was the first one with the USAO concerning Kovar and Profit Connect.[33]  The record thus reflects that conversations began in June 2021, and the FBI didn't open its criminal investigation until October 1, 2021.[34]  In *Stringer*, it was "significant" to the Ninth Circuit's finding of no bad faith that "the SEC began its civil investigation first and brought in the U.S. Attorney later," noting that this particular sequence of events "tends to negate any likelihood that the government began the civil investigation in bad faith . . . ."[35]  The same is true here.  It is uncontroverted that the SEC's investigation began first, and Kovar has not presented any evidence or plausible theories suggesting otherwise.

Nor has Kovar presented any evidence suggesting that the SEC brought its civil action "solely for purposes of advancing a criminal case."[36]  The court in *Stringer* found that the SEC action in that case was not merely pretext to obtain evidence in the subsequent criminal case because that action "led to SEC sanctions and was conducted [under] the SEC's own civil

---

government to disprove the need for a hearing after a defendant brings a speculative motion to dismiss because parallel investigations were involved in his case, and I have not found any.

[33] ECF No. 63-1 at 4.  Kovar retorts that one SEC attorney may not know if any other conversations occurred before June 2021, but Kovar's speculation cannot overcome a signed declaration, made upon personal knowledge, that no such conversations occurred.

[34] ECF No. 63 at 6.

[35] *Stringer*, 535 F.3d at 939.

[36] *Id.*

7

enforcement jurisdiction."[37] Kovar's SEC action was brought under the SEC's civil jurisdiction, has been actively ongoing for five years, generated nearly 300 docket entries, resulted in the recovery of and distribution to investors of millions of dollars, and spawned additional lawsuits to recover company assets.[38] The record of that case clearly reflects that the SEC had its own interest in enforcing civil securities laws against Kovar and his business, separate from the USAO's interest in criminally prosecuting him.

Kovar next contends that "the government's use of statements obtained from [him] raises substantial Fifth Amendment concerns."[39] He points to the interview that he had with the receiver appointed in the civil-enforcement case, noting that he was questioned "for hours regarding Profit Connect's operations, finances, cryptocurrency holdings, bank accounts, business plans, personnel, customers, assets, and internal records," and notes that there is no indication that the receiver informed Kovar that his statements could be used in a criminal proceeding.[40] But a court-appointed receiver is not an SEC agent or an extension of the SEC's litigation team. The receiver rather "stand[s] in the shoes of the injured corporation[]" and "is entitled to pursue the corporation's claims for the benefit not of the wrongdoers but of innocent investors."[41] Kovar presents no legal theory or evidence suggesting that the obligation of law enforcement to give self-incrimination warnings can be foisted upon a receiver from a private fiduciary-services provider.

---

[37] *Id.*

[38] *See generally SEC v. Profit Connect*, Case No. 2:21-cv-01298-JAD-BNW.

[39] ECF No. 59 at 10.

[40] *Id.*

[41] *SEC v. Peterson*, 129 F.4th 599, 607 (9th Cir. 2025) (cleaned up).

But even if the receiver's interview could be considered a law-enforcement interview, Kovar has not shown that he was given insufficient notice that his participation in the SEC action may be used against him in criminal proceedings or that he was entitled to invoke his Fifth Amendment rights during his civil case. Indeed, a stipulation filed by both parties on July 21st—three days before his interview with the receiver—acknowledged that Kovar could "assert [his] Fifth Amendment privilege against compulsory self-incrimination" and refuse to provide accountings of their finances.[42] Kovar exercised that right in a stipulation filed about a week after his interview.[43] So the record reflects that Kovar was on notice that his involvement in the SEC case could have criminal ramifications when he attended the receiver's interview.

Finally, Kovar suggests that the IRS's April 2022 interview raises self-incrimination concerns. He contends that, "[d]espite [the] knowledge" that he exercised his Fifth Amendment rights in some capacity in the SEC action, the IRS interviewed him anyway.[44] Kovar suggests that the IRS interview "may be vulnerable to suppression" because it's unknown whether the IRS agent informed him of his Fifth Amendment rights before speaking with him.[45]

But on this point too, the evidence suggests otherwise. An IRS document memorializing the interview states that the special agent "read K[ovar] Document 5661-A (Non-Custody Statement of Rights) from the card," and the government provided a current copy of that card, which includes a warning about the Fifth Amendment implications of answering the IRS's

---

[42] ECF No. 21 in *SEC v. Profit Connect*, 2:21-cv-01298-JAD-BNW.

[43] ECF No. 25 at 4 in *SEC v. Profit Connect*, 2:21-cv-01298-JAD-BNW.

[44] ECF No. 59 at 11.

[45] ECF No. 65 at 10.

questions. Only Kovar's untethered speculation suggests that he wasn't made aware of his right against self-incrimination when interviewed by the IRS, while the record reflects that he was.[46]

In short, Kovar has not provided the court with any evidence or argument suggesting that the government may have made affirmative misrepresentations about its parallel proceedings or acted in bad faith when pursuing civil and criminal investigations at the same time. Nor has he shown that he has any support for his unfounded speculation that the collaboration between the SEC, FBI, IRS, or USAO was somehow improper. Because the motion lacks any support, I decline to permit discovery and an evidentiary hearing on this topic, and I deny Kovar's motion to dismiss or suppress.

**B.    Kovar's motion in limine to exclude the term "Ponzi scheme" from trial is denied.**

Kovar moves to exclude the term "Ponzi scheme" from his trial, contending that allowing the term "would create a substantial risk of unfair prejudice, confuse the issues, and improperly substitute a shorthand accusation for proof of specific elements such as intent, materiality, and knowledge."[47] Black's Law Dictionary defines a Ponzi scheme as "[a] fraudulent investment scheme in which money contributed by later investors generates artificially high dividends or returns for the original investors, whose example attracts even larger investments."[48] Kovar's

---

[46] To the extent that Kovar seeks a hearing on the basis of his alternative suppression request, I deny that request because Kovar has not identified any facts to support his conclusory allegations. *See United States v. Wilson*, 7 F.3d 828, 834 (9th Cir. 1993) ("A hearing is not required if the grounds for suppression consist solely of conclusory allegations of illegality." (citation omitted)); *United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000) (affirming district court's denial of motion for a suppression hearing because the defendant "identified no facts which, if proved, would allow the court to suppress" his confession).

[47] ECF No. 62.

[48] *Ponzi scheme*, Black's Law Dictionary (12th ed. 2024); *see also Donnell v. Kowell*, 533 F.3d 762, 767 n.2 (9th Cir. 2008) (defining "Ponzi scheme" as "a financial fraud that induces investment by promising extremely high, risk-free returns . . . from an allegedly legitimate

indictment alleges that he falsely represented to investors that Profit Connect was a successful cryptocurrency-mining company that "paid investors a fixed rate of return of 15–30% APR," when it was in fact not a legitimate operation, could not pay out fixed rates of return, and used investor money to, among other things, "repay investors as if those repayments came from mining cryptocurrency and verifying cryptocurrency transactions."[49]

Kovar doesn't deny that the government's allegations clearly fit within the "Ponzi scheme" definition.  He instead argues that the term is "uniquely inflammatory" and "risks encouraging the jury to reason that if the conduct resembles a 'Ponzi scheme,' then the defendant must be guilty, regardless of whether the government has actually proven each required element beyond a reasonable doubt."[50]  The government points out that Kovar didn't cite any authority in his motion and argues that the term is an accurate description of Kovar's conduct and thus is relevant and not prejudicial.[51]

I deny Kovar's motion.  "Ponzi scheme" is a succinct, accurate description of how the government alleges Kovar's fraud was conducted.  And "there is no rule of evidence or ethics that forbids the prosecutor from referring to the crime by its common name" or that "requir[es] the prosecutor to use a euphemism for it."[52]  Kovar hasn't shown that using the term "Ponzi scheme" would confuse the jury into believing that it does not need to determine every element of the wire-fraud, mail-fraud, or money-laundering charges that the government brings against

---

business venture" that consists of "funneling proceeds received from new investors to previous investors in the guise of profits from the alleged business venture" (cleaned up)).

[49] ECF No. 1 at ¶¶ 3–4.

[50] ECF No. 62 at 3.

[51] ECF No. 66.

[52] *United States v. Rude*, 88 F.3d 1538, 1548 (9th Cir. 1996) (quoting *Guam v. Torre*, 68 F.3d 1177, 1180 (9th Cir. 1995)).

him.  Other courts in this circuit have reached the same conclusion, and I am persuaded by their well-reasoned opinions.[53]

## Conclusion

IT IS THEREFORE ORDERED that Kovar's motion to dismiss or, in the alternative, to suppress **[ECF No. 59 is DENIED]**.

IT IS FURTHER ORDERED that Kovar's motion in limine to exclude the term "Ponzi scheme" from trial **[ECF No. 62] is DENIED.**

_____
U.S. District Judge Jennifer A. Dorsey
June 30, 2026

---

[53] *See, e.g.*, *United States v. Ruskjer*, 2011 WL 3841854, at *4 (D. Haw. Aug. 29, 2011) (denying motion in limine to exclude the term "Ponzi scheme" from trial); *Altaa Invs. LLC v. Prod. Cap. LLC*, 2023 WL 4157365, at *6 (C.D. Cal. June 7, 2023) (same); *see also Rude*, 88 F.3d at 1547–48 (affirming fraud conviction and rejecting claim that the prosecution engaged in misconduct by using "inflammatory jingles such as 'scam,' 'Ponzi Scheme,' 'gibberish,' 'victim,' 'outlandish,' 'charlatan,' 'con,' 'deceit,'" etc., in opening statements, finding that the terms "reasonably described the practices of defendants").